## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| RICK PANSIERA, *on behalf of himself and others similarly-situated*, | : | Case No. 1:19-cv-1042 |
| | : | |
| | : | Judge Timothy S. Black |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| THE HOME CITY ICE COMPANY, | : | |
| | | |
| Defendant. | | |

### ORDER GRANTING PLAINTIFF'S MOTION TO CERTIFY A CLASS TO PURSUE DECLARATORY AND INJUNCTIVE RELIEF ONLY (DOC. 20)

This civil case is before the Court on Plaintiff's motion for class certification

(Doc. 20) and the parties' responsive memoranda. (Docs. 26 and 28).

## I. BACKGROUND

The allegations here are straightforward. (*See* Complaint, Doc. 1). Plaintiff and

Indiana resident Rick Pansiera buys bags of ice made by Defendant Home City Ice

Company ("HCI"), an Ohio-based company. (*Id.* at ¶¶1-4). Plaintiff buys bags labelled

as "7lbs." (*Id.* at ¶17). Plaintiff alleges that many of these "7lb" bags do not in fact weigh

seven pounds and that HCI knows it. (*Id.* at ¶¶14, 21). Accordingly, per the complaint,

HCI has been aware its ice bags were "defective, mismarked, and over-priced, but chose

to conceal, suppress, or omit these material facts while distributing, marketing, and

selling the Ice Bags to unsuspecting consumers in Indiana, Ohio, and throughout the

United States." (*Id.* at ¶25).

Plaintiff asserts a number of bases for his claims. To start, Plaintiff has weighed several "7lb" bags himself and found them to be underweight. (*Id.* at ¶16). Through certification-oriented discovery, Plaintiff has also unearthed documents tending to show that HCI's "retained samples"—the ice bags HCI takes off production lines and weighs on a daily basis—routinely weigh less than seven pounds. (*See* Docs. 23-1, 23-2). Plaintiff claims, using data compiled by HCI, that 14.3% of HCI's "7lb" bags weigh less than seven pounds. (Doc. 20 at PageID# 124). Finally, Plaintiff has also discovered several letters from the Wisconsin Department of Agriculture, Trade and Consumer Protection admonishing HCI regarding underweight ice bags. As an example, one such letter states: "9 out of 12 of your 7lb. ice packages were short an average of .201 pounds and had an average cost error of .07 cents." (Doc. 20-10; *see also* Doc. 20-11 to Doc. 20-25).

Plaintiff has asserted several causes of action in his complaint, including breach of express warranty, breach of implied warranty of merchantability, unjust enrichment and violations of Ohio's Deceptive Trade Practices Law and Indiana's Deceptive Consumer Sales Act ("IDCSA"). (Doc. 1 at ¶¶34-99). The Court dismissed the Ohio Deceptive Trade Practices Law claim. (Doc. 10). The Court also dismissed one count under the IDCSA because Plaintiff had not sufficiently pleaded an "uncured" deceptive act. (*Id.*). Another claim under the IDCSA, alleging an "incurable" deceptive act, survived HCI's motion to dismiss. (*Id.*). Thus, the "incurable deceptive act" claim under the IDCSA and all other non-dismissed claims remain.

Immediately before the Court is Plaintiff's motion to certify a nationwide class and an Indiana subclass. (Doc. 20).

Plaintiff seeks to certify a nationwide class described as:

…all persons in the United States who purchased an underweight "7 lb." ice bag from HCI during the applicable limitations period. Excluded from the Nationwide Class are persons who made such purchase for purpose of resale; the defendant, its officers, directors, employees, legal representatives, successors, assigns; any person or entity who has or who at any time during the relevant class period had a controlling interest in any Defendant; the Judges to whom this case is assigned and any member of the Judges' immediate family; and all persons who may submit timely and otherwise proper requests for exclusion from the Nationwide Class. (Doc. 20 at PageID## 130-31).[1]

Plaintiff's Indiana subclass is substantially similar to the proposed nationwide class, but pertains to Indiana purchasers who, by virtue of purchasing their ice bags in Indiana, are allegedly entitled to relief under the IDCSA.

Plaintiff also moves for class certification under two different subdivisions of Federal Rule of Civil Procedure 23 ("Rule 23"). To the extent Plaintiff seeks injunctive and declaratory relief, Plaintiff moves to certify a class under Rule 23(b)(2). (Doc. 20 at PageID# 140). To the extent Plaintiff seeks monetary damages, Plaintiff seeks to certify a class under Rule 23(b)(3). (*Id.* at PageID# 139).

Plaintiff has requested oral argument. (Doc. 20). However, "the Court finds that oral argument is not deemed to be essential to the fair resolution" of this motion. *See Neff v. Flagstar Bank, FSB*, No. 2:11-CV-1136, 2014 WL 3855086, at *4 (S.D. Ohio Aug. 5, 2014). Accordingly, the Court denies Plaintiff's request for oral argument.

---

[1] As discussed below, this class description differs from what is in the Plaintiff's complaint.

## II. STANDARD

Class actions constitute "an exception to usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1978). "In order to justify a departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). To obtain class certification, a plaintiff must meet each of the four prerequisites contained in Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequate representation. *Zehentbauer Family Land, LP v. Chesapeake Expl. LLC*, 935 F.3d 496, 503 (6th Cir. 2019).

"[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). This rigorous analysis may require "the court to probe behind the pleadings before coming to rest on the certification question." *Id.* However, courts do not have "license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

In addition to meeting the four criteria in Rule 23(a), a plaintiff must demonstrate that the putative class complies with at least one of the requirements of Rule 23(b). *Id.* Here, as mentioned, Plaintiff seeks certification of the class pursuant to Rule 23(b)(2) and (b)(3). (Doc. 38 at 35.) A court may certify a class under Rule 23(b)(3) only if it "finds that the questions of law or fact common to class members predominate over any

4

questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Finally, a Rule 23(b)(3) class must also meet an implied ascertainability requirement. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017). There is no ascertainability requirement for a Rule 23(b)(2) class. *See Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016).

## II. ANALYSIS

### A. Ascertainability

A class is sufficiently ascertainable when class members can be identified based on objective criteria. *See Rikos v. P&G*, 799 F.3d 497, 526 (6th Cir. 2015) (affirming finding of ascertainability where the identification of class members would involve "substantial review" of records, supplemented by the use of receipts and affidavits). The purpose of the ascertainability requirement is to ensure administrative feasibility, including the ability to notify absent class members in order to provide them an opportunity to opt out and avoid the potential collateral estoppel effects of a final judgment. *Cole*, 839 F.3d 530, 541 (6th Cir. 2016).

To avoid confusion, the Court addresses a threshold issue. Plaintiff's class description in the complaint is inconsistent with the "class to be certified" in its motion. In the complaint, Plaintiff describes the class, with exceptions, as "all persons in the United States who purchased a '7 lb' Ice Bag from the Defendant (the 'Class') during the applicable limitations period." (Doc. 1 at ¶26). In his motion to certify, on the other hand, Plaintiff states: "[t]he Nationwide Class shall consist of all persons in the United

States who purchased an <u>underweight</u> '7 lb' ice bag from HCI during the applicable limitations period." (Doc. 20 at PageID# 130) (emphasis added). Courts generally allow revisions to class descriptions, so the inconsistency is not fatal. *See e.g, Glass v. Tradesmen Int'l*, LLC, 505 F. Supp. 3d 747, 767 n.5 (N.D. Ohio 2020). But it does leave open the question of what the Court should regard as the applicable proposed class.

The parties have fully briefed the issue assuming the proposed class would consist of purchasers of underweight "7lb" bags of HCI ice, not purchasers of any "7lb" bags. Moreover, if the class consisted of all purchasers of HCI's "7lb" ice bags, it would likely be dominated by members with no claims at all — indeed, about 86% of such a class would have no claims at all if Plaintiff's alleged proportion of underweight bags is taken at face value. Accordingly, the Court will consider the applicable class to consist of purchasers of underweight bags of ice, as Plaintiff himself argues in his motion to certify.

As to ascertainability, Plaintiff argues that the class members are identifiable with reference to objective criteria ("purchasers of underweight bags of ice," "within the limitations period"). (Doc. 20 at PageID# 132). HCI argues that the class is not ascertainable because, among other reasons, even if class members could produce receipts or other proofs of purchase, there is no way to ascertain <u>which</u> purchasers bought <u>underweight</u> bags of ice. (Doc. 26 at PageID# 690).

The Court agrees with HCI that Plaintiff has not proposed an ascertainable class. This is because Plaintiff establishes no reasonable method allowing class members to identify themselves.

To be sure, Plaintiff does propose several theoretical proofs of class member identification. Plaintiff states that "electronic sales records," "class members' submission of receipts and affidavits," and "use of a special master to review individual claims" could be used to determine the class. (Doc. 20 at PageID# 132 (quoting *Rikos*, 799 F.3d at 526)). What Plaintiff does not explain is how this would work. Nothing from Plaintiff's list could be expected to document the purchase of <u>underweight</u> bags of ice. Plaintiff's own evidence underlines the point. He attaches grocery receipts to support this motion. (Doc. 20-27). The receipts do not list the weight, theoretical or actual, of the ice bags in question. (*Id.*).

This problem puts the case squarely in line with the dilemma at issue in *Sandusky Wellness v. ASD Specialty Healthcare,* 863 F.3d 460 (6th Cir. 2017). *Sandusky* involved alleged violations of the Telephone Consumer Protection Act ("TCPA"), based on unsolicited mass faxes. Plaintiff there proposed a class consisting of everyone who received the offending fax. The Sixth Circuit clearly explained the ascertainability problem as follows:

> The district court does not know who received the Prolia fax. The fax logs no longer exist. Yet we know that 13,159 individuals on the Prolia List do not have valid claims against Besse. <u>Sandusky has proposed no method for weeding out these individuals, who comprise approximately 25% of all intended recipients</u>. The district court recognized that its own proffered solution—having class members submit individual affidavits testifying to receipt of the Prolia fax—was not feasible, concluding that the reliability of an individual's recollection of having received a seven-year-old, single-page fax would be dubious at best. Furthermore, it is possible that all 53,502 intended recipients might submit affidavits claiming receipt of the Prolia fax and their entitlement to $500 in damages. Finding out which quarter of these individuals were being untruthful would require scrutinizing each affidavit and would undoubtedly be a difficult undertaking.

7

*Id.*, 863 F.3d at 472–73 (6th Cir. 2017) (emphasis added).

The parallels here are straightforward. Plaintiff cannot say what records will establish class membership—in other words, what documentation would show who purchased the underweight bags of ice. And there is an even more fundamental problem with class membership here. Even at the point of purchase, the consumers themselves would probably not know that they had purchased an underweight bag of ice. Plaintiff does not even acknowledge that purchasers of ice bags, besides him, do not routinely, if ever, weigh the goods at the point of purchase.

In reply, Plaintiff circles back to the idea of "affidavits." (Doc. 28 at PageID# 811). But, as with the unsuccessful plaintiff in *Sandusky*, Plaintiff here does not address the practical barriers of using affidavits in these circumstances. If an affidavit only described purchasing "7lb" bags of ice, it would not suffice to identify the affiant as a member of the class. This Court would be skeptical indeed of any affidavits stating something so generalized as a "reasonable belief" that an ice bag was underweight. And, as already alluded to, Plaintiff gives the Court no reason to believe class members, besides Plaintiff, weighed their bags of ice. In the language of *Sandusky*, Plaintiff here has not proposed a method for "weeding out" the class members from the larger population of HCI ice purchasers. 863 F.3d at 473.

Plaintiff correctly identifies that the standard calls for class-member identification with "reasonable" rather than "perfect" accuracy. (Doc. 20 at PageID# 132). Plaintiff, though, fails to clear the "reasonable" threshold. Indeed, cases suggest that a "reasonable" identification process may be complicated or imperfect. *See Young v.*

8

*Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012) (finding class members "could be discerned with reasonable accuracy using Defendants' electronic records and available geocoding software.") (internal quotations omitted); *see also Barrett v. Wesley Fin. Grp., LLC*, No. 13CV554-LAB (KSC), 2015 WL 12910740, at *3 (S.D. Cal. Mar. 30, 2015) ("Barrett has also described a method to identify specific members of the class through defendants' records and a reverse telephone lookup. ").  Here, alas, Plaintiff puts forth a list of possible forms of class-member identification but has no plan for making them effective.

The Court is aware that the nature of the allegations creates this ascertainability predicament.  In many consumer class actions based on misleading labels, the misleading character of the label allegedly applies to every unit. *See Rikos*, 782 F. Supp. 2d at 535. That is not the case here.  Similarly, in design defect cases, with which this case shares some common elements, an error rate is used as evidence of a flaw that afflicts all units— even those units that have not yet manifested the defect. *See, e.g.*, *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990, at *21 (N.D. Ill. Mar. 31, 2017).  Plaintiff here, though, does not allege that the properly weighted and labelled HCI bags have any latent failures, merely because 14% of all total ice bags allegedly come off the same manufacturing line weighing less than seven pounds.  The ascertainability hurdle might still be clearable if the defective ice bags remained identifiable based on inspection.  But ice is disposed of quickly or else it simply melts on its own.

While these issues are seemingly not the type that would render a case unsuitable for class treatment generally, they do present a problem for ascertainably. And, in the Rule 23(b)(3) analysis, the Court cannot simply do away with the ascertainability requirement. The presence of an ascertainability requirement is the law of the Sixth Circuit. *Young*, 693 F.3d at 537 (6th Cir. 2012). Furthermore, without identifiable class members, this Court cannot guarantee opt out opportunities and due process rights to those whose claims for money damages would be rendered *res judicata* by a judgment or a settlement in this case. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011) (discussing relationship between money claims and preclusive effects on class members). In other words, ascertainability protects important rights, and Plaintiff's proposed class simply is not ascertainable.

Since ascertainability is a requirement for class certification under Rule 23(b)(3), Plaintiff's motion must fail with respect to Rule 23(b)(3). Plaintiff seeks certification for monetary damages <u>only</u> under Rule 23(b)(3), as is appropriate. *See Dukes*, 564 U.S. 338, 362 (2011) (explaining the relationship between 23(b)(2) and 23(b)(3) and concluding "[g]iven that structure, we think it clear that individualized monetary claims belong in Rule 23(b)(3)."). Because monetary relief is only cognizable under Rule 23(b)(3), Plaintiff's class claims for individualized monetary damages will not go forward as a class action. *See Reeb v. Ohio Dep't of Rehab. & Correction*, 435 F.3d 639, 650 (6th Cir. 2006).

But Plaintiff has also specifically requested declaratory and injunctive relief. For this relief, Plaintiff seeks certification under Rule 23(b)(2). Courts have engaged in a

10

vigorous discussion about whether and when similarly positioned plaintiffs ought to be allowed to proceed with certification under 23(b)(2)—for injunctive relief—when it fails to meet the standards of 23(b)(3).[2] The Sixth Circuit has approvingly quoted this approach, as stated by astute observers of federal courts:

> Disputes over whether [an] action is primarily for injunctive ... relief rather than a monetary award neither promote the disposition of the case on the merits nor represent a useful expenditure of energy. Therefore, they should be avoided. <u>If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed</u>. Those aspects of the case not falling within Rule 23(b)(2) should be treated as incidental. Indeed, quite commonly they will fall within Rule 23(b)(1) or Rule 23(b)(3) and may be heard on a class basis under one of those subdivisions. Even when this is not the case, the action should not be dismissed.

*Olden v. LaFarge Corp.*, 383 F.3d 495, 510–11 (6th Cir. 2004) (quoting 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure, 2d.*, § 1775) (emphasis added). Additionally, citing to *Olden* and analyzing many other cases, a sister court has persuasively rejected the notion "that a court must deny Rule 23(b)(2) certification any time a plaintiff seeks individualized money damages." *McDonald v. Franklin Cty.*, Ohio, 306 F.R.D. 548, 560 (S.D. Ohio 2015)

---

[2] *See e.g.*, *Reeb*, 435 F.3d at 646 (6th Cir. 2006); *McDonald v. Franklin Cty., Ohio*, 306 F.R.D. 548, 558 (S.D. Ohio 2015); *Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 960 (N.D. Ohio 2009), aff'd, 395 F. App'x 152 (6th Cir. 2010); *see also* 7AA Fed. Prac. & Proc. Civ, Certification of Hybrid Class Actions, § 1784.1 (3d ed.) ("[T]he question of how to certify actions presenting multiple claims that appear to fall within different subdivisions is not agreed upon and has generated some controversy. This problem is particularly acute in actions seeking both injunctive and damages relief.").

The Court finds this reasoning persuasive and will thus proceed to analyze Plaintiff's entitlement to class certification for declaratory and injunctive relief under Rule 23(b)(2). The Court first analyzes the Rule 23(a) prerequisites.

### B. Numerosity

Plaintiff has met the numerosity requirement by demonstrating that the class is so numerous "that joinder of all members is impracticable." Fed. Rule Civ. P. 23(a)(1). There is no strict numerical cut-off. *Young*, 693 F.3d at 541. Yet, "impracticability of joinder must be positively shown, and cannot be speculative." *Id.* (citing *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005)). "Often, 'a class of 40 or more members is sufficient to meet the numerosity requirement.'" *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2017 WL 2418738, at *2 (S.D. Ohio June 5, 2017) (quoting *Snelling v. ATC Healthcare Servs. Inc.*, No. 2:11-cv-983, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012)); *see also Peterson v. Cleveland Inst. of Art*, No. 1:08-cv-1217, 2011 WL 1297097, at *7 (N.D. Ohio Mar. 31, 2011) (noting Sixth Circuit has previously found class of thirty-five sufficiently numerous) (citing *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1030 (6th Cir. 1977)).

Plaintiff has established numerosity. Plaintiff has provided an estimate that 14% of HCI ice bags are underweight and has backed up his general allegations of a pattern of underweight bags with evidence. HCI takes umbrage with the data inputs used to reach the 14% figure, but even if the true percentage were much smaller, joinder would be impractical by virtue of the raw quantity of ice bags sold — around 24.5 million bags

annually according to reasonable calculations by Plaintiff. (Doc. 20 at PageID# 120).[3]
Additionally, the admonishing letters from the Wisconsin consumer protection agency
lend credence to the notion that Plaintiff has not merely stumbled upon an otherwise
exceedingly rare occurrence of underweight bags.  HCI counters that that "there is no
evidence of similar notices from regulators in any other state." (Doc. 26 at PageID# 685).
But, of course, nor is it clear how many of the 16 states where HCI sells ice are directing
their regulators to weigh ice bags.

Accordingly, Plaintiff has met the standard for numerosity.

### C. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the
class."  Although the Rule "speaks of 'questions' in the plural," the Sixth Circuit has held
that "one question common to the class" satisfies this requirement.  *Sprague v. Gen.*
*Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  As the Supreme Court explained in
*Tyson Foods, Inc. v. Bouaphakeo*, "[a]n individual question is one where 'members of a
proposed class will need to present evidence that varies from member to member,' while
a common question is one where 'the same evidence will suffice for each member to

---

[3] There are considerable questions of fact as to HCI's operations, what its internal data does or
does not reveal about consistency of bag weights, quality control measures, proper base rates and
so forth.  The parties devote considerable briefing to these issues.  The Court is of course aware
that merits and certification issues may "overlap." *In re Whirlpool Corp. Front-Loading Washer*
*Prod. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013).  But, in this case, the parties largely debate
these issues completely devoid of any Rule 23 context.  To the extent the parties argue about
facts that have no bearing on the "maintainability" of a class action, the Court ignores them. *Id.*

make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg, *Newberg on Class Actions* § 4:50, pp. 196-197 (5th ed. 2012)).

Commonality does not require "the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Zehentbauer*, 935 F.3d at 503 (quoting *Wal-Mart*, 564 U.S. at 350). Said another way, commonality is met when determining the "truth or falsity" of a common contention "will resolve an issue that is central to the validity of each one of the claims in one stroke," advancing the litigation. *Wal-Mart*, 564 U.S. at 350; *Sprague*, 133 F.3d at 397.

At the certification stage, a plaintiff need not show that "all or most class members were in fact injured to meet this requirement." *Rikos*, 799 F.3d at 505. Rather, a plaintiff must demonstrate "that they *can prove* . . . that all members of the class have suffered the same injury." *Id.* at 505, 522. In addition, class members "need not be identically situated to meet the commonality requirement." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012) (internal quotations omitted).

Reduced to Plaintiff's claims for injunctive and declaratory relief under Rule 23(b)(2), Plaintiff has established the requisite commonality. Since the class is there defined, in relevant part, as "all persons in the United States who purchased an underweight '7 lb.' ice bag from HCI during the applicable limitations period," the commonality between class members is clear. (Doc. 20 at PageID# 130). All purchasers of underweight HCI ice bags would indeed suffer the same injury. Common proofs would

14

include evidence that bags roll of HCI's production lines systematically underweight, that HCI exercises control over the weight variance, and that HCI knows or has reason to know it is selling mislabeled ice bags. Noticeably, on commonality, Defendant does not even argue the point.

The true number of ice bags that are underweight, if any, has not been established. However, Plaintiff provides evidence suggesting that any failures in the HCI production line are not completely isolated. Coupling that fact with the sheer number of HCI ice bags that reach consumers, the Court is satisfied that Plaintiff has established numerosity.

## D. Typicality

Federal Rule of Civil Procedure 23(a)(3) requires plaintiffs to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Hendricks v. Total Quality Logistics*, LLC, No. 1:10-cv-649, 2019 WL 2387206, at *7 (S.D. Ohio Mar. 22, 2019) (quoting *Sprague*, 133 F.3d at 399). The purpose of the requirement is to ensure that the representatives' interests and the interests of the class members are aligned. *Id.* "Many courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory." *Rikos*, 799 F.3d at 509 (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7A *Federal Practice and Procedure* § 1764 (3d ed. 2005)). Moreover, the typicality and commonality analysis "tend to merge," as both "serve as guideposts for determining whether under the particular circumstances maintenance of a

15

class action is economical and whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 131 S. Ct. at 2551 n.5.

For reasons already elaborated regarding commonality, Plaintiff has also established typicality. Indeed, the class members' claims, if they are established, will arise from a "unitary course of conduct," which also applies to Plaintiff. *Rikos*, 799 F.3d at 509 (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7A *Federal Practice and Procedure* § 1764 (3d ed. 2005)). That course of conduct has to do with HCI's standardized ice production and labelling methods. Similarly, the legal theory would be uniform across class members and Plaintiff. Accordingly, Plaintiff has met the typicality requirement.

HCI takes a constitutional angle in opposition. Specifically, HCI argues that Plaintiff does not have Article III standing, and, therefore, his claims cannot be typical of the class members' claims. To HCI's mind, Plaintiff lacks "injury-in-fact" because his purported injuries are "self-inflicted." (Doc. 26 at PageID## 694-95 (citing *Bucholz v. Meyer Jjus Tanick*, *PA*, 946 F.3d 855, 866 (6th Cir. 2020)). Developing the argument further, HCI contends that "Plaintiff knowingly bought product that he believed did not conform to the '7 lb.' label on the bags. Thus, any injury Plaintiff suffered as result of his purchasing these allegedly underweight bags was entirely self-inflicted, and not traceable to any conduct of [HCI]." (Doc. 26 at PageID# 695).

16

To start, it does not seem that all harms alleged by Plaintiff were "self-inflicted." This is because the Court does not construe the complaint to address only those ice purchases where Plaintiff explicitly weighed the ice.

Specifically, Plaintiff alleges in the complaint:

> Prior to the filing of this complaint, Plaintiff Rick Pansiera visited stores multiple times per week to purchase an Ice Bag for his personal use. Plaintiff purchased Ice Bags in both Ohio and Indiana. Plaintiff saw the representation on the Ice Bag that its "NET WT. [was] 7 Lbs" prior to and at the time of purchase and understood this to be a representation and warranty that his Ice Bag would, in fact, contain seven pounds of ice. Plaintiff Rick Pansiera relied on this representation and warranty in deciding to purchase the Ice Bags, and this representation and warranty was a part of the basis of the bargain.

(Doc. 20 at ¶2).

While Plaintiff did eventually weigh ice bags he purchased—and did so before purchasing them—the clear thrust of the complaint seems to be that Plaintiff has also purchased underweight bags of ice without having first weighed them, since he bought ice "multiple" times a week "prior to filing the complaint." Thus, even accepting *arguendo* HCI's argument that Plaintiff's knowledge of the defect itself renders the injury "self-inflicted," the Court would not necessarily conclude that all the harm complained of stems from Plaintiff's own behavior.

A second problem with HCI's standing argument is that it ignores Plaintiff's claims for injunctive and declaratory relief. Standing to assert injunctive relief looks to a "threat of future injury." *See City of Los Angeles v. Lyons,* 461 U.S. 95, 123, 103 S. Ct. 1660, 1676, 75 L. Ed. 2d 675 (1983). "The Sixth Circuit has found ongoing harm where it is not too speculative that future harm could occur, and where "a reasonable inference"

17

can be drawn that an as-yet-unrealized harm might come to pass." *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1274 (E.D. Mich. 2021) (quoting *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 410 (6th Cir. 2019)). As discussed more in-depth later, Plaintiff alleges he lacks consumer alternatives to HCI's ice bags and has continued to purchase them. This establishes a "reasonable inference" that Plaintiff faces future harm. *Kanuszewski*, 927 F.3d at 410 (6th Cir. 2019). Thus, Plaintiff has standing to seek injunctive relief.

Finally, Defendant also contends that before October 2018, the period before the Plaintiff started weighing the ice, Plaintiff does not and cannot know whether he purchased any underweight bags of ice. (Doc. 26 at PageID# 696). If accepted, this proposition would put Plaintiff's knowledge in a seeming paradox: knowledge of the deception gives Plaintiff the foundation for the claim but it also destroys standing to assert the same claim. As stated by HCI, "[i]t would therefore be impossible for Plaintiff to prove, through affidavit or otherwise, that he bought an underweight bag prior to October 2018, and all of his alleged post-October 2018 underweight bag purchases were made with knowledge that the bags were underweight." (*Id.*).

Other courts have persuasively rejected the argument HCI makes here. One such court stated that "were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result." *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012). *Ries* addresses a different set of laws, based in California. Nonetheless, the reasoning applies

18

here as well.[4]  Plaintiff here could only act once he has a basis in fact upon which to base his allegations.  Moreover, Plaintiff may infer that he purchased underweight bags of ice before October 2018 based on his observation of underweight bags in and after October 2018.  Accordingly, HCI's argument fails.

HCI's argument on reliance must meet a similar fate. (Doc. 26 at PageID# 696).  Citing to Plaintiff's deposition, HCI states that when Plaintiff purchased bags of ice with knowledge that they were underweight, Plaintiff could not have relied on the "7lb" representation. (*Id.*).  Again, though, Defendant ostensibly bought many more bags of ice prior to 2018 and has pleaded that he relied on the "7lb" representation for those purchases. (Doc. 1 at ¶2).  Thus, the Court finds HCI's arguments against typicality unpersuasive.  Plaintiff has met the standard for typicality.

### E.  Adequacy

The adequacy of representation requirement of Rule 23(a)(4) ensures that "the representative parties will fairly and adequately protect the interests of the class."  This requirement has two components: (1) the representatives must have common interests with the unnamed class members, and (2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel.  *See Rikos*, No. 1:11-cv-225, 2018 WL 2009681, at *5 (S.D. Ohio Apr. 30, 2018) (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)).

---

[4] Several courts have picked up on the reasoning of *Ries*.  *See Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (collecting cases addressing a similar question).

In terms of legal rights, Plaintiff does have common interests with the unnamed class members. He and the proposed plaintiff class have allegedly purchased underweight bags of ice based on misrepresentations. The only argument HCI makes in opposition reprises its reliance contentions. (Doc. 20 at PageID# 696). Alas, for HCI, the Court has already determined its reliance argument is unpersuasive, given the plain allegations of the complaint. Plaintiff has established common interests with the class he seeks to represent.

On the other hand, Defendant makes no attack on Plaintiff's capacity to "vigorously prosecute the class action through qualified counsel." *See Rikos*, No. 1:11-cv-225, 2018 WL 2009681, at *5 (S.D. Ohio Apr. 30, 2018) (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)). Having reviewed the qualifications of counsel, the Court is satisfied Plaintiff and his counsel will pursue the class's interests vigorously and have the requisite experience and skill to do so. (*See* Docs. 20-31 and 20-32). Accordingly, Plaintiff has established himself and his counsel as adequate representatives of the proposed class.

### F. Class 23(b)(2) Requirements

To certify a class for injunctive and declaratory relief under Rule 23(b)(2), Plaintiff must show "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23. "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared

20

unlawful only as to all of the class members or to none of them.'" *Gooch v. Life Investors Ins. Co. of Am.*, 672 F. 3d 402, 428 (6th Cir. 2012) (quoting *Dukes*, 131 S. Ct. at 2557).

Plaintiff seeks both a court declaration and an injunction. (Doc. 20 at PageID# 140). The proposed injunction would have the Court ordering HCI to "adopt policies and procedures that ensure that ice bags placed into the market for sale to consumers bear an accurate weight statement, and to cease its deceptive and misleading practices concerning the advertising, labeling, and sale of ice bags that it knows or should know are underweight." (Doc. 20 at PageID# 141). Because both Plaintiff and the proposed class members have purchased underweight bags of ice, this injunctive relief would benefit all of them. Thus, it is true "that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or to none of them." *Gooch*, 672 F. 3d 402, 428 (6th Cir. 2012) (quoting *Dukes*, 131 S. Ct. at 2557).

HCI complains that the class consists of "past" purchasers of ice. (Doc. 26 at PageID# 700). HCI further argues there is no indication Plaintiff or the class would purchase the bags of ice in the future, suggesting, for HCI, that an injunction would not benefit the class. (*Id.*). HCI's argument here is based on mere hopefulness—the hope the Plaintiff and the class are not future HCI customers. There is no basis for the assertion.

But there is at least a preliminary basis for the opposite conclusion. Plaintiff alleges he has continued to buy HCI ice bags because there are simply too few options. (Doc. 17 at PageID# 28; *see also* Deposition of Rick Pansiera, 43:12-25, 44:1-4; Doc. 17-5). In support of this argument, Plaintiff also points to HCI's seeming involvement in an anti-competitive conspiracy to divide markets and customers. *See United States of*

21

*America v. Home City Ice*, CR-1-07-140, Information ¶2 (S.D. Ohio 2007); *see also In re Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 999 (E.D. Mich. 2010) (explaining a litany of anti-trust allegations against would-be competitors in the packaged ice industry, including HCI). The absent class members, meanwhile, are likely facing future harm because there is no reason to believe they would have stopped purchasing HCI ice bags.

HCI's actions generally apply to the class. For that reason, declaratory and injunctive relief—if it is warranted—would uniformly benefit the class. Thus, Plaintiff is entitled to class certification for declaratory and injunctive relief under Rule 23(b)(2).

To summarize the Court's class-oriented determinations, Plaintiff is not entitled to have a class certified for monetary damages under Rule 23(b)(3). This is because Plaintiff has not proposed an ascertainable class. In turn, the Court has no way to administer a Rule 23(b)(3) class. The Court could not, for example, guarantee rights to those who would wish to opt-out of a potential monetary settlement or sufficiently. Accordingly, Plaintiff's motion for class certification will be denied with respect to all monetary claims.

The Court has separately considered Plaintiff's request for a class that would pursue declaratory and injunctive relief under Rule 23(b)(2). Here, Plaintiff is entitled to class certification. Plaintiff has met the Rule 23(a) prerequisites and demonstrated that declaratory and injunctive relief would uniformly benefit the proposed class.

From the Court's view, Plaintiff's request for class certification for declaratory and injunctive relief applies only to the proposed nationwide class. Plaintiff specifically argues the nationwide class's entitlement to certification for declaratory and injunctive

under Rule 23(b)(2). (Doc. 20 at PageID# 140). But Plaintiff only analyzes the Indiana subclass's entitlement to class certification under Rule 23(b)(3), and makes no mention of Rule 23(b)(2) or declaratory or injunctive relief to which the subclass may be entitled. (*Id.* at PageID## 142-145). Thus, the Court will certify a nationwide class only.

Nevertheless, "[d]istrict courts have the discretion and even the obligation to reassess their class rulings as the case develops." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.,* 302 F.R.D. 448, 459 (N.D. Ohio 2014) (cleaned up). Accordingly, Plaintiff may request a revision of the class description via motion if he believes one is warranted.

### III. CONCLUSION

Based upon the foregoing:

1. Plaintiff's motion for class certification (Doc. 20) is **GRANTED** in part and **DENIED** in part, as follows:

   a. For the purpose of seeking declaratory and injunctive relief **only**, the Court hereby certifies the following class:

      All persons in the United States who purchased an underweight "7 lb." ice bag from HCI during the applicable limitations period. Excluded from the Nationwide Class are persons who made such purchase for purpose of resale; the defendant, its officers, directors, employees, legal representatives, successors, assigns; any person or entity who has or who at any time during the relevant class period had a controlling interest in any Defendant; the Judges to whom this case is assigned and any member of the Judges' immediate family

   b. The Court **DENIES** Plaintiff's motion for class certification under Rule 23(b)(3). Accordingly, Plaintiff's claims for monetary damages **CANNOT** be maintained as a class action.

2. The Court appoints Rick Pansiera as class representative and his counsel from the law firms of Vorys, Sater, Seymore and Pease LLP and Santen and Hughes, LPA as class counsel.

3. In coordination with the parties, the Court shall set a status conference to discuss, *inter alia*, "appropriate notice" to the class pursuant to Fed. R. Civ. P. 23(c)(2)(A).

4. The Court **DENIES** Plaintiff's request for oral argument.

**IT IS SO ORDERED.**

Date:  3/14/2022                                          *s/Timothy S. Black*
                                                          Timothy S. Black
                                                          United States District Judge