## CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is made and entered into this 23ʳᵈ day of ~~April~~ JUNE, 2023 (the "**Execution Date**"), by and between The Home City Ice Company, an Ohio corporation ("**Home City**" or "**HCI**"), and Rick Pansiera, the "**Plaintiff**" both individually and on behalf of the "**Class**" (as defined below).

## RECITALS

**WHEREAS**, Plaintiff is the lead plaintiff in the Action;

**WHEREAS**, Plaintiff alleges that some of Home City's "7 lb." bags of ice do not in fact weigh seven pounds, and that Home City knew or should have known its ice bags were mismarked, but chose to conceal, suppress, or omit these material facts while distributing, marketing, and selling the ice bags to unsuspecting consumers through the United States;

**WHEREAS**, Plaintiff asserted claims against Home City for breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, violations of Ohio's Deceptive Trade Practices Law, violations of the IDCSA, negligent misrepresentation, promissory estoppel, fraud, and declaratory and injunctive relief;

**WHEREAS**, the Court dismissed the Ohio Deceptive Trade Practices Law claim and one count under the IDCSA. Thus, the "incurable deceptive act" claim under the IDCSA and all other non-dismissed claims remain;

**WHEREAS**, Home City denies Plaintiff's allegations;

**WHEREAS**, on March 14, 2022, the Court certified the Action as a class action for the pursuit of injunctive relief or corresponding declaratory relief under Fed. R. Civ. P. 23(b)(2);

**WHEREAS**, Plaintiff has conducted an investigation into the facts and the law regarding

the Action and has concluded that a settlement with Home City according to the terms set forth below is in the best interest of Plaintiff and the Settlement Class;

**WHEREAS**, Home City, despite its belief that it has good defenses to the claims alleged, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation; and

**NOW, THEREFORE**, subject to approval of the Court, in consideration of the covenants, agreements and releases set forth herein, the parties agree as follows:

## TERMS AND CONDITIONS OF SETTLEMENT

### I. DEFINITIONS

The following terms, as used in this Agreement, have the following meanings:

1.1 "**Action**" means the civil action known as *Pansiera, et al., v. The Home City Ice Co.*, pending in the United States District Court for the Southern District of Ohio, Case No. 1:19-cv-01042.

1.2 "**Claims**" means the claims, rights, demands, assertions, allegations, causes of action, damages, injuries, attorneys' fees, costs, expenses, or remedies that are related to the subject matter of the Action.

1.3 "**Class**" means: "All persons in the United States who purchased an underweight '7 lb.' ice bag manufactured by or on behalf of HCI during the applicable limitations period. Excluded from the Settlement Class are persons who made such purchase for purpose of resale; the defendant, its officers, directors, employees, legal representatives, successors, assigns; any person or entity who has or who at any time during the relevant class period had a controlling interest in any Defendant; the Judges to whom this case is assigned and any member of the Judges'

immediate families."

1.4     **"Class Counsel"** means Brian P. O'Connor, William E. Santen, Jr., Jacob D. Mahle, Victor A. Walton, Jr., Brent D. Craft, and the law firms of Santen & Hughes, L.P.A. and Vorys, Sater, Seymour & Pease LLP.

1.5     **"Class Members"** means the individual persons who are members of the Class.

1.6     **"Class Representative"** or **"Plaintiff"** means Rick Pansiera.

1.7     **"Court"** means the United States District Court for the Southern District of Ohio and the Honorable Timothy S. Black, before whom the Action is pending;

1.8     **"IDCSA"** means Indiana's Deceptive Consumer Sales Act.

1.9     **"Product"** means Home City's "7 lb." bag of ice.

1.10    **"Releasees"** means jointly and severally, individually and collectively Home City, and its past and present officers, directors, employees, agents, attorneys, shareholders, parents, subsidiaries, affiliates, divisions, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. As used in this Agreement, "affiliates" means entities controlling, controlled by or under common control with a Releasee.

1.11    The plural of any defined term includes the singular, and the singular of any defined term includes the plural, as the case may be.

## II.    SETTLEMENT CONSIDERATION

2.1     As more fully set forth in this Agreement, Home City shall consent to the entry of an agreed injunction concerning the following items: (i) sample bag guidelines; (ii) package labeling; (iii) policies and procedures regarding bag weights; and (iv) third-party sampling.

2.1.1   Plaintiff and Home City shall jointly move the Court for orders preliminarily and finally approving this settlement, which will provide the Class with injunctive

relief ordering Home City to: (a) increase the amount of its acceptable fill range for the Product from 7.0-7.5 lbs. to 7.1-7.6 lbs.; (b) modify the packaging for the Product to include a statement that the weight of the Product is measured when packaged; (c) create and maintain an automated system for the daily reporting of underweight sample bags of Product and an automated alert if any manufacturing facility fails to daily report weights; and (d) perform routine quality control and quality assurance audits regarding the weight of the Product, and to engage a third-party consultant to conduct sampling of the Product.

    2.1.2 The third-party consultant to be engaged shall sample, weigh, and report the weight of ten bags of the Product at ten Home City manufacturing locations per fiscal quarter. A list of the manufacturing locations to be reviewed, and the third-party consultant performing the review, is attached hereto as Exhibit A. The third-party's sampling shall occur on or before the end of each of two full consecutive fiscal quarters, with the sampling beginning with the next full fiscal quarter that begins after the Effective Date. Home City shall file a notice with the Court following each fiscal quarter reflecting the results of the sampling from that fiscal quarter. If the third-party sampling reveals that more than 7 of the 100 bags of Product sampled weighed less than 6.83 lbs., then Home City shall be required to conduct one additional fiscal quarter of third-party sampling under the same terms and conditions as set forth herein. The third-party sampling component of the injunctive relief in the final agreed judgment order shall terminate only after Home City has certified in a total of two quarterly notices filed with the Court that the third-party sampling from a fiscal quarter revealed 7 or less instances of Product sampled that weighed less than 6.83 lbs.

    2.2 Home City shall additionally pay Class Counsel's attorney fees and expenses in the amount of $325,000.00, and a $10,000 incentive award to Plaintiff, subject to the approval of the

Court.

## III. NOTICE

3.1 Home City shall serve notice of the Settlement Agreement that meets the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("**CAFA**") on the appropriate federal and state officials no later than ten days after filing of the motion seeking approval of this Settlement Agreement with the Court. Home City shall certify to the Court that it has complied with CAFA. Home City shall promptly provide Class Counsel with any substantive responses received in response to any CAFA Notice.

## IV. RELEASES

4.1 Upon the Effective Date and in consideration of the relief specified in this Agreement, Plaintiff, on his individual behalf only, hereby releases, acquits, and forever discharges Home City Releasees from any and all Claims, demands, actions, suits, and causes of action including costs, expenses, and attorneys' fees, that Plaintiff ever had, now has, or hereafter can, shall, or may have against the Releasees or any of them, whether known or unknown, suspected or unsuspected, in law or equity, that relate to claims arising out of allegations of Home City's misrepresentations concerning the weight of its Product involving a common factual predicate that is asserted in the Litigation, which arise under any federal law, any state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, unjust enrichment or civil conspiracy including, without limitation, breach of express warranty, breach of implied warranty of merchantability, unjust enrichment and violations of any deceptive trade practices law, deceptive consumer sales act laws, from the beginning of time until the Effective Date (the "**Released Claims**").

4.2 The Class Members other than Plaintiff are not releasing, through this Agreement,

any liabilities, Claims, causes of action, damages (whether actual, compensatory, statutory, punitive, or of any other type), penalties, losses, or demands, whether known or unknown, existing or suspected or unsuspected, for money damages or other form of monetary relief.

## V. SETTLEMENT HEARING, FINAL JUDGMENT AND ORDER

5.1    Promptly after execution of this Agreement, Class Counsel and counsel for Home City shall jointly submit to the Court a motion and proposed order, in the forms attached hereto as Exhibits B and C, requesting preliminary approval of the settlement (the "**Motion**"). Concurrently, Class Counsel shall file their application for an award of attorneys' fees, costs, and expenses, not to exceed $325,000.00, and for a $10,000.00 incentive award for Plaintiff (the "**Application**"), to which Home City will not object. The Parties shall further request that the Court schedule a hearing on the Motion and Application (the "**Approval Hearing**"). The Parties and their counsel shall undertake any and all reasonable efforts appropriate or necessary to obtain the Court's approval of this Agreement as being a fair, reasonable and adequate settlement as to the Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement.

5.2    This Agreement shall become final only when: (a) the Court has entered a final judgment order approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure, and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and the entry of a final judgment as described in clause (a) above has expired or, if appealed, approval of this Agreement and the final judgment has been affirmed in its entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review ("**Effective Date**"). It is agreed that neither the

provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. §1651, shall be taken into account in determining the above-stated times.

## VI. CONDITIONS FOR EFFECTIVE DATE; EFFECT OF TERMINATION

6.1   If this Agreement is not approved by the Court or the settlement is terminated or fails to become effective in accordance with the terms of this agreement, the parties will be restored to their respective positions in the Litigation as of the date the Motion for Approval was filed.

6.2   A modification or reversal on appeal of any amount of Class Counsel's fees or reimbursement of litigation costs and expenses awarded by the Court shall not be deemed to affect the fundamental terms and conditions of this Agreement.

## VII. MISCELLANEOUS

7.1   This Agreement does not settle or compromise any claim by Plaintiff against any person or entity other than the Releasees. All rights of Plaintiff against any person or entity beyond or other than the Releasees are specifically reserved by Plaintiff.

7.2   Plaintiff waives California Civil Code Section 1542 and similar provisions in other states. Plaintiff hereby certifies that he is aware of and have read and reviewed the following provision of California Civil Code Section 1542 ("**Section 1542**"): "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." The provisions of the release set forth above shall apply according to their terms, regardless of the provisions of Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction. Plaintiff may hereafter discover facts other than

or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of this paragraph, but Plaintiff hereby expressly and fully, finally and forever waives and relinquishes, and forever settles and releases any and all rights and benefits existing under (i) Section 1542 or any equivalent, similar or comparable present or future law or principle of law of any jurisdiction and (ii) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above.

7.3   This Agreement constitutes the entire agreement among Plaintiff and Home City pertaining to the settlement of the Action against Home City and supersedes any and all prior and contemporaneous undertakings of Plaintiff and Home City in connection therewith. No modification or amendment of this Agreement shall be effective unless and until it is in writing, executed by Plaintiff and Home City and, thereafter, has been approved by the Court in accordance with proper procedures for obtaining Court approval.

7.4   This Agreement shall be deemed the "proposed agreement" filed with the Court within the meaning of 28 U.S.C. § 1715 as of the date of its filing with the Court.

7.5   Neither Plaintiff nor Home City shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute, the common law, or rule of interpretation that would or might cause any provision of this Agreement to be construed against the drafter. Each party agrees that this Agreement has been drawn by each of them in collaboration with the other.

7.6   This Agreement may be executed in counterparts by Plaintiff and Home City, all of which shall be deemed one original. A facsimile or pdf. signature shall be deemed an original signature for purposes of executing this Agreement.

7.7   All Parties to this Agreement agree to reasonably cooperate in seeking Court

approval of the Agreement and to use their best efforts to effect consummation of the Agreement.

7.8. The Agreement shall be interpreted, construed, and enforced in accordance with the applicable laws of the United States of America and the State of Ohio. Any action at law, suit in equity, or judicial proceeding arising directly, indirectly, or otherwise in connection with, out of, or related to, or from this Agreement shall be litigated before the Court.

7.9 The Parties agree that the invalidity or unenforceability of any one provision or part of this Agreement will not render any other provision or part thereof invalid or unenforceable, and that such provision or part shall remain in full force and effect, to the extent that continued enforcement absent the unenforceable provisions does not deprive a Party of a material benefit under this Agreement or frustrate a material purpose of this Agreement.

7.10 No waiver of any breach of any provision of this Agreement shall constitute a waiver of any prior, concurrent, or subsequent breach of the same or any provisions hereof, and no waiver shall be effective unless made in writing and signed by an authorized representative of the waiving Party.

*[remainder of the page intentionally left blank]*

**IN WITNESS WHEREOF**, the Parties have executed this Agreement.

JUNE 23rd, ~~April~~ ___, 2023

_____
Rick Pansiera

~~April~~ Jun 4, 2023

_____
Brian P. O'Connor
William E. Santen, Jr.
SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202
bpo@santenhughes.com
wsj@santenhughes.com
(513) 721.4450

April ___, 2023

_____
Jacob D. Mahle
Victor A. Walton, Jr.
Brent D. Craft
VORYS, SATER, SEYMOUR & PEASE LLP
3500 Great American Tower
301 E. Fourth Street
Cincinnati, Ohio 45202
jdmahle@vorys.com
vawalton@vorys.com
bdcraft@vorys.com
(513) 723.8589

*Counsel for the Class and
Attorneys for Plaintiff, Rick Pansiera*

April 7, 2023

THE HOME CITY ICE COMPANY

By: _____
Its: James E. Stautberg/President

**IN WITNESS WHEREOF,** the Parties have executed this Agreement.

April ___, 2023

_____
Rick Pansiera

April ___, 2023

_____
Brian P. O'Connor
William E. Santen, Jr.
SANTEN & HUGHES
600 Vine Street, Suite 2700
Cincinnati, Ohio 45202
bpo@santenhughes.com
wsj@santenhughes.com
(513) 721.4450

~~April~~ Jun 20, 2023

_____
Jacob D. Mahle
Victor A. Walton, Jr.
Brent D. Craft
VORYS, SATER, SEYMOUR & PEASE LLP
3500 Great American Tower
301 E. Fourth Street
Cincinnati, Ohio 45202
jdmahle@vorys.com
vawalton@vorys.com
bdcraft@vorys.com
(513) 723.8589

*Counsel for the Class and
Attorneys for Plaintiff, Rick Pansiera*

April 7, 2023

THE HOME CITY ICE COMPANY

By: _James E. Stautberg_
Its: James E. Stautberg/President

April 19, 2023

*/s/ Michael A. Roberts*
Michael A. Roberts
GRAYDON, HEAD & RITCHEY LLP
1900 Fifth Third Center 511 Walnut Street
Cincinnati, OH 45202
mroberts@graydon.law
(513) 621-6464

*Attorneys for Defendant,*
*The Home City Ice Company*

## EXHIBIT LIST

**Exhibit A**  Spreadsheet of Manufacturing Facilities to be Reviewed by Third-Party Consultant

**Exhibit B**  Joint Motion for Preliminary Approval of Settlement Agreement, Certification of a Tentative Settlement Class and Appointment of Class Counsel

**Exhibit C**  [Proposed] Order Granting Preliminary Approval of the Settlement, Certification of a Tentative Settlement Class and Appointment of Class Counsel

# EXHIBIT A

| Plant | Address | City | State | Zip Code | Lab | Lab Address |
|---|---|---|---|---|---|---|
| Wilder | 5 Plum Street | Wilder | KY | 41076 | Q Labs | 1911 Radcliff Dr, Cincinnati, OH 45204 |
| Forest Park | 11920 Kempersprings Drive | Forest Park | OH | 45240 | Q Labs | 1911 Radcliff Dr, Cincinnati, OH 45204 |
| Lawrence | 5535 Macy Court | Indianapolis | IN | 46235 | Q Labs | 1911 Radcliff Dr, Cincinnati, OH 45204 |
| Washington Street | 3602 West Washington Street | Indianapolis | IN | 46241 | Q Labs | 1911 Radcliff Dr, Cincinnati, OH 45204 |
| Chicago | 2248 N Natchez | Chicago | IL | 60707 | Microbac | 250 West 84th Drive, Merrillville, IN 46410 |
| Woodridge | 1125 International Parkway | Woodridge | IL | 60517 | Microbac | 250 West 84th Drive, Merrillville, IN 46410 |
| Crown Point | 668 Madison Street | Crown Point | IN | 46307 | Microbac | 250 West 84th Drive, Merrillville, IN 46410 |
| South Bend | 5310 West Brick Rd | South Bend | IN | 46628 | Microbac | 250 West 84th Drive, Merrillville, IN 46410 |
| Elgin | 720 Schneider Dr | South Elgin | IL | 60177 | Microbac | 250 West 84th Drive, Merrillville, IN 46410 |
| 59th St | 3600 W 59th St | Chicago | IL | 60629 | Microbac | 250 West 84th Drive, Merrillville, IN 46410 |

| Lab Contact Name | Lab Contact Email | Lab Phone Number |
|---|---|---|
| Tom Utecht | tutecht@qlaboratories.com | 513-471-1300 |
| Tom Utecht | tutecht@qlaboratories.com | 513-471-1300 |
| Tom Utecht | tutecht@qlaboratories.com | 513-471-1300 |
| Tom Utecht | tutecht@qlaboratories.com | 513-471-1300 |
| Karen Ziolkowski | karen.ziolkowski@microbac.com | 219-769-8378 |
| Karen Ziolkowski | karen.ziolkowski@microbac.com | 219-769-8378 |
| Karen Ziolkowski | karen.ziolkowski@microbac.com | 219-769-8378 |
| Karen Ziolkowski | karen.ziolkowski@microbac.com | 219-769-8378 |
| Karen Ziolkowski | karen.ziolkowski@microbac.com | 219-769-8378 |
| Karen Ziolkowski | karen.ziolkowski@microbac.com | 219-769-8378 |