UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RICK PANSIERA, | : | Case No. 1:19-cv-1042 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| THE HOME CITY ICE COMPANY, | : | |
| Defendant. | : | |

**ORDER GRANTING FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND CERTIFYING CLASS**

This civil case is before the Court on the parties' joint motion for final approval of the class action settlement (Doc. 39) and Plaintiff's unopposed motion for payment of attorneys' fees, costs, and expenses, and incentive award (Doc. 37).

## I. BACKGROUND

The underlying facts of this case are generally straightforward. (*See* Doc. 1). Simply put, Plaintiff alleges that Defendant Home City Ice ("HCI") knowingly sold bags of ice to consumers that were marketed and labeled as 7lb. bags, but actually weighed less than 7lbs. (*Id.*)

In the Complaint, Plaintiff asserted several claims on behalf of himself and all others similarly situated: (1) breach of warranty; (2) breach of implied warranty of merchantability; (3) unjust enrichment; (4) violation of the Ohio Deceptive Trade Practices Act ("ODTPA"); (5) violation of the Indiana Consumer Sales Practices Act ("IDCSA"); (6) negligent misrepresentation; (7) promissory estoppel; (8) fraud; and (9)

declaratory and injunctive relief. (Doc. 1). In June 2020, upon Defendant HCI's partial motion to dismiss, the Court dismissed Plaintiff's ODTPA claim and partially dismissed Plaintiff's IDCSA claim. (Doc. 10).

Plaintiff then moved for class certification, for appointment of class representative, and for appointment of class counsel. (Doc. 20). The Court granted the motion in part. (Doc. 29). Specifically, the Court denied Plaintiff's request to proceed with a class action for money damages. (*Id.* at 23). The Court granted Plaintiff's request to proceed as a class for declaratory and injunctive relief only, and certified the following class:

> All persons in the United States who purchased an underweight "7 lb." ice bag manufactured by or on behalf of HCI during the applicable limitations period. Excluded from the Settlement Class are persons who made such purchase for purpose of resale; the defendant, its officers, directors, employees, legal representative, successors, assigns; any person or entity who has or who at any time during the relevant class period had a controlling interest in any Defendant; the Judges to whom this case is assigned and any member of the Judges' immediate families.

(*Id.*) Moreover, Named Plaintiff Rick Pansiera was appointed as class representative, and the law firms of Vorys, Sater, Seymore and Pease LLP and Santen & Hughes, LPA were appointed as class counsel. (*Id.* at 24).

The parties then proceeded through additional discovery and mediation. Mediation proved to be successful, and the parties reached a tentative settlement, subject to preliminary and final court approval. (*See* Settlement Agreement, Doc. 36-1). The Settlement Agreement contemplates that the parties will seeks joint injunctive relief that will order HCI to:

2

> (a) increase the amount of its acceptable fill range for the Product (i.e., HCI's "7lb" bag of ice) from 7.0-7.5 lbs to 7.1-7.6 lbs; (b) modify the packaging for the Product to include a statement that the weight of the Product is measured when packaged; (c) create and maintain an automated system for the daily reporting of underweight sample bags of Product and an automated alert if any manufacturing facility fails to daily report weights; and (d) perform routine quality control and quality assurance audits regarding the weight of the Product, and to engage a third-party consultant to conduct sampling of the Product.

(*Id.* at § 2.1). Also pursuant to the Settlement Agreement, Class Counsel may seek up to $325,000.00 in fees and costs and Plaintiff may seek a $10,000 incentive award to be paid by HCI. (*Id.* at § 5.1).

On June 23, 2023, the parties filed a joint motion seeking preliminary approval of the settlement agreement (Doc. 36), and Plaintiff also filed an unopposed motion for attorneys' fees and a class representative service award, as contemplated in the settlement agreement (Doc. 37). On August 7, 2023, the Court preliminarily approved the settlement. (Doc. 38).

On February 13, 2024, the parties filed a joint motion seeking final approval of the settlement. (Doc. 39). On February 27, 2024, the Court held a final fairness hearing by video conference. (Min. Entry, Feb. 27, 2024).

The Court now considers whether the Settlement Agreement should be finally approved (Doc. 39), as well as the propriety of the requested attorneys' fees and service award (Doc. 37).

3

## II. ANALYSIS

### A. Final Class Certification

"The benefits of a settlement can be realized only through the final certification of a settlement class." *Rikos v. Proctor & Gamble Co.*, No. 1:11-CV-226, 2018 WL 2009681, at *4 (S.D. Ohio Apr. 30, 2018). The Court maintains broad discretion in deciding whether to certify a class.

The Settlement Agreement contemplates the following Settlement Class:

> All persons in the United States who purchased an underweight "7 lb." ice bag manufactured by or on behalf of HCI during the applicable limitations period. Excluded from the Settlement Class are persons who made such purchase for purpose of resale; the defendant, its officers, directors, employees, legal representative, successors, assigns; any person or entity who has or who at any time during the relevant class period had a controlling interest in any Defendant; the Judges to whom this case is assigned and any member of the Judges' immediate families.

(Doc. 36-1 at § 1.3).

#### a. Rule 23(a)

An action may proceed as a class if four prerequisites are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). The Court previously determined that the Settlement Class met the requirements of Fed. R. Civ. P. 23(a) when certifying the same class for declaratory and injunctive relief only. (*See* Doc. 29). And for the same reasons discussed in that Order, the Court continues to find that the Settlement Class meets the requirements of Rule 23(a). (*Id.*)

4

  b. <u>Rule 23(b)</u>

Not only must the four prerequisites of Rule 23(a) be met before a class can be certified, but "the party seeking certification must also demonstrate that it falls within at least one of the subcategories of Rule 23(b)." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Here, because the settlement only contemplates injunctive relief, Rule 23(b)(2) applies.

Rule 23(b)(2) permits class certification only when the Rule 23(a) requirements are met and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Court previously determined that the Settlement Class satisfied Rule 23(b)(2). (*See* Doc. 29). And for the same reasons discussed in that Order, the Court continues to find that the Settlement Class satisfies Rule 23(b)(2) because the injunctive relief proposed by the settlement would uniformly benefit the class. (*Id.*)

Accordingly, for the foregoing reasons, the Court approves of the Settlement Class for final certification and certifies the Settlement Class.

 **B. Notice**

For a class certified under Rule 23(b)(2), "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). Here, however, notice is not required because a class certified under Rule 23(b)(2) is a mandatory class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) ("The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them

5

notice of the action."); *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 669 n.4 (6th Cir. 2020) ("Pursuant to Rule 23, only members of classes certified under Rule 23(b)(3), rather than (b)(1) or (b)(2), are entitled to notice of class certification and an opportunity to opt-out of the class.") (citing Fed. R. Civ. P. 23(c)(2)(A), (B)); *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002) (Rule 23(b)(2) is a mandatory class; it does "not require that a court provide individual members of the class with notice and the opportunity to 'opt out' of the class action").

When granting preliminary approval of the settlement agreement, the Court found that, because the Settlement Agreement provided for injunctive relief only, notice to individual class members is unnecessary and that notice pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, is adequate. (Doc. 38 at 2). As contemplated in the Settlement Agreement and the Court's preliminary approval Order, Defendant complied with CAFA's notice requirements. (Not. Order, Nov. 21, 2023; Doc. 39-1 at 1, 3; Min. Entry, Feb. 27, 2024). Accordingly, the Court finds that notice was appropriate. Moreover, as reflected on the Court's docket, no government official objected to the to the Settlement Agreement, nor otherwise attempted to intervene or participate in this civil action or the Fairness Hearing following receipt of CAFA notice.

### C. Settlement Approval

Final approval of the proposed settlement is warranted if the Court finds the terms of the settlement are "fair, reasonable, and adequate." *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992). When deciding whether a settlement should receive final approval, the Court considers several factors:

6

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia*, L.L.C., 636 F.3d 235, 244 (6th Cir. 2011) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). *See also* Fed. R. Civ. P. 23(e)(2). The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada*, 962 F.2d at 1205-06. Finally, in considering these factors, the task of the Court "is not to decide whether one side is right or even whether one side has the better of these arguments…The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632.

### 1. Risk of Fraud or Collusion

Courts generally presume the absence of fraud or collusion unless proven otherwise. *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement unless evidence to the contrary is offered."); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 501 (E.D. Mich. 2008) ("Without evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion.").

Here, there is no evidence or indication of fraud or collusion. Indeed, the settlement was the result of arm's-length negotiations, conducted by experienced counsel for both parties, facilitated by an independent and experienced mediator. (*E.g.*, Doc. 33). Accordingly, the Court concludes that the settlement was reached in good faith and does not present the risk of fraud or collusion.

### 2. *Complexity, Expense, and Duration of the Litigation*

"Generally speaking, most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics*, 137 F. Supp. 2d at 1013 (quotation omitted). Although the underlying facts of this action may seem simple—whether HCI sold underweight bags of ice—this case has spanned over four years to date, during which the parties have litigated complex issues, and Defendant HCI has consistently denied any wrongdoing. Thus, without settlement, the parties would undoubtedly continue to expend significant time and money litigating this case through additional discovery, dispositive motions, trial, and appeal. Accordingly, this factor weighs in favor of approval.

### 3. *Amount of Discovery*

Over the nearly four years since this litigation commenced, the parties exchanged discovery related to Defendant HCI's processes. Indeed, Plaintiff conducted significant initial discovery related to class certification prior to seeking class certification. (*E.g.*, Doc. 20-11 to Doc. 20-25; Doc. 23-1; Doc. 23-2). Moreover, prior to settlement, the parties exchanged voluminous discovery, issued numerous subpoenas to state bureaus and departments, and deposed multiple key witnesses (including HCI employees,

8

corporate representatives, and Class Representative Pansiera). (See, *e.g.*, Doc. 39 at 10). The discovery conducted in this case was sufficient.

### 4. *Likelihood of Success on the Merits*

The settlement provides mandatory injunctive relief to all persons who purchased a 7lb bag of ice, and will undoubtedly benefit all persons who continue to purchase 7lb bags of ice from HCI. And although Plaintiff believes that he would ultimately prevail on the issues, there is an inherent risk of litigation and trial. Indeed, over Plaintiff's objections, the Court already found that Plaintiff could not pursue a class action for money damages because Plaintiff has not proposed an ascertainable class. Thus, by agreeing to the settlement, the inherent risks of litigation are eliminated, and Class Members are now guaranteed to receive reasonable and appropriate relief presently, rather than expending years of time and litigation efforts to receive, effectively, the same relief or, very possibly, receive no relief at all. This factor weighs in favor of approval.

### 5. *Opinion of Counsel & Representatives*

Class Counsel and the Class Representative approve of the settlement. And the competency and experience of Class Counsel is not in dispute. This factor weighs in favor of approval.

### 6. *Reaction of Absent Class Members*

The reaction of absent class members strongly supports approving the settlement. No class member has objected to the settlement. Moreover, notice was served pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, at least 90 days have passed since

notice was issued, and no official has responded to the notice. Accordingly, this factor weighs heavily in favor of approval.

### 7. *Public interest*

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada*, 962 F.2d at 1205); *see also In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 19, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve."). This case is no exception, and this factor weighs in favor of approval.

In short, based upon the foregoing, the Court finds that all factors weigh in favor of approving the settlement. The Court finds that the settlement is fair, reasonable, and adequate. And, therefore, the settlement is approved.

### D. Class Counsels' Requested Fees and Costs & Class Representative's Incentive Award are Appropriate

Class Counsel moves, unopposed, for an order approving a combined $325,000 in attorneys' fees and costs, as well as a $10,000 incentive award to Class Representative Pansiera. (Doc. 37).

### 1. *Attorneys' Fees and Costs*

In general, "there are two methods for calculating attorney fees: the lodestar and the percentage-of-the-fund." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 Fed.

App'x. 496, 498 (6th Cir. 2011). "District courts have discretion 'to select the more appropriate method for calculating attorney's fees in light of the unique characteristics class actions in general, and of the unique circumstances of the actual cases before them.'" *Id*. (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). "The lodestar method better accounts for the amount of work done, while the percentage of the fund method more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516. A district court "generally must explain its 'reasons for adopting a particular methodology and the factors considered in arriving at the fee.'" *Id*. (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)).

Here, Class Counsel requests a fee award based on the lodestar method. The Court agrees. This method is particularly appropriate in a class action resulting solely in injunctive relief, where there is no common fund and the exact value of the resulting benefit to the class cannot be precisely determined. Thus, in this case "[t]he lodestar method will account for the amount of work performed by counsel and will ensure that counsel is fairly compensated for the results achieved." *City of Plantation*, 2014 WL 7404000 at *11 (citing *Rawlings*, 9 F.3d at 515–16; *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005)).

In determining an appropriate "lodestar" figure, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir.1995) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Court "may then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to

11

the subject litigation." *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citing *Reed v. Rhodes*, 179 F.3d 453, 471–72 (6th Cir.1999)).

    a. <u>Reasonable Hours</u>

> [T]he key requirement for an award of attorney fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation .... Although counsel need not record in great detail each minute he or she spent on an item, the general subject matter should be identified.

*Gascho*, 822 F.3d at 281 (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008)) (internal quotation marks and citations omitted).

As of June 2023, when Class Counsel filed the parties' joint motion for <u>preliminary</u> approval of the settlement agreement, Class Counsel had already expended a combined total of approximately 1,215 hours on the matter. (Doc. 37-2 at ¶7; Doc. 37-3 at ¶ 7). Having reviewed the billing records, the Court finds that these hours were actually and reasonably expended during the litigation.[1]

    b. <u>Hourly Rate</u>

As explained by the Sixth Circuit:

> This circuit uses the "community market rule" to calculate a reasonable billing rate. Under that rule, the billing rate "should not exceed what is necessary to encourage competent lawyers within the relevant community to undertake legal

---

[1] Class Counsel did not attach billing records with their original motion but offered to provide billing records for *in camera* review. (Doc. 37-2 at ¶ 6; Doc. 37-3 at ¶ 6). Upon request from the Court, Class Counsel submitted billing records for *in camera* review. The Court has reviewed those billing records and the records remain in the Court's possession.

12

>representation. In a similar vein, our court has made clear that lawyers are entitled only to "reasonable" fees and that such fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region. The burden is on the lawyer seeking fees to submit evidence—in addition to the attorney's own affidavits—showing that the requested rate is reasonable.

*Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 630 (6th Cir. 2020) (cleaned up).

Here, the hourly rates requested range from $250-$295 for work completed by associates and $375-540 for work completed by partners with 12 to 40 years of experience. (Doc. 37-3 at ¶ 10).[2] When considering the experience of the attorneys in this case, the attorneys' normal billing rates, and the Court's own knowledge and expertise in handling similar fee requests, the Court finds that the requested hourly rates are reasonable.

### c. Requested Fee is Reasonable Overall

Moreover, in assessing the overall reasonableness of a fee award, courts:

>[o]ften, but by no means invariably,…address these factors: "(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides."

---

[2] As of the date of Class Counsel's motion, Class Counsel had billed approximately $550,000 in fees for the 1,215 hours worked, resulting in an average hourly rate of about $450 per attorney, which the Court finds to be in line with (or below) billing rates awarded within this district for attorneys of Class Counsel's skill and experience.

13

*Moulton*, 581 F.3d at 352 (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)); *see also Ramey*, 508 F.2d at 1196.

Here, the *Ramey* factors are met. As detailed, *supra*, Class Counsel provided a benefit to the class because the outcome reached through counsels' diligent efforts provides a significant benefit to the class members. Moreover, the time expended and hourly rate appropriately reflects the value of the extensive services rendered by experienced Class Counsel. Class Counsel undertook this representation on a contingent fee basis. (Doc. 37-2 at ¶ 2; Doc. 37-3 at ¶ 2). Society has an interest in having competent and experienced counsel take on complex litigation such as this, and the awarded fees appropriately incentivize similarly situated counsel in future litigation. The litigation was complex, as discussed *supra*. And Class Counsel is well-represented by highly experienced attorneys.

Moreover, when assessing reasonableness, the Court may, "within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Adcock–Ladd*, 227 F.3d at 349 (quoting *Reed*, 179 F.3d at 471–72). In adjusting the lodestar to arrive at a reasonable fee award, the Court may consider the following factors:

> "(1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Id*. at 349 n. 8 (quoting *Reed*, 179 F.3d at 471–72 n. 3). Of these factors, the "results obtained" is the most important factor in determining the reasonableness of a fee award. *Kentucky Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 420 (6th Cir. 2004) (citing *Hensley*, 461 U.S. at 434–36). *See also Adcock–Ladd*, 227 F.3d at 349 ("A highly important *Johnson* factor is the result achieved.").

Here, as set forth *supra*, this Court has found that the instant case presented complex issues and extensive litigation, all of which were professionally and expertly addressed by counsel, resulting in a settlement that significantly benefitted the class and the public. Moreover, the reasonableness of the fees is reflected by the multiplier in this case. As of the date Class Counsel filed the parties' joint motion for <u>preliminary</u> approval of the settlement agreement, Class Counsel combined incurred an average of approximately $550,000 in attorneys' fees and roughly $26,000 in costs.[3] (Doc. 37). Thus, prior to seeking final approval and attending the final approval hearing, the requested $325,000 for fees and costs already resulted in a negative multiplier. Thus, the Court finds that the lodestar supports the requested fee.

Accordingly, considering all the factors, the Court determines the fees and costs requested are reasonable, and **GRANTS** Class Counsel's request for fees and costs in the amount of $325,000.00.

---

[3] Vorys had incurred $278,091.50 in fees and $22,855.09 in costs. (Doc. 37-2 at ¶ 7). Santen has incurred $272,058.00 in fees and $3,448.57 in costs. (Doc. 37-3 at ¶ 7).

15

### *2. Class Representative Incentive Award*

Finally, as anticipated and set forth in the Settlement Agreement, Class Counsel seeks the Court's approval of an incentive award in the amount of $10,000 to Class Representative Richard W. Pansiera, in recognition of his services and assistance in this case. (Doc. 37 at 19-21).

"Courts typically authorize contribution (or 'incentive' awards) to class representatives for their often extensive involvement with a lawsuit." *Rikos*, 2018 WL 2009681, at *10. "Such compensation to named plaintiffs is typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *Id*.

Here, Class Representative Pansiera has been an informed, dutiful, and active participant throughout the litigation. (Doc. 37 at 20). Pansiera has been responsive and helpful throughout the discovery process. Specifically, Pansiera assisted with document review and production, and he was also deposed during the litigation, resulting in several hours of aggressive questioning. Ultimately, Pansiera helped to achieve a beneficial settlement for the class.

Accordingly, the Court **GRANTS** Class Representative Richard W. Pansiera a service award, in the amount of $10,000, to be paid pursuant to the Settlement Agreement.

### III. CONCLUSION

Based upon the foregoing, the Court **GRANTS** the joint motion for final approval of Rule 23 class action settlement, class certification, and final judgment (Doc. 39); and **GRANTS** Plaintiff's unopposed motion for payment of attorneys' fees/costs and for class representative's service award (Doc. 37).

Accordingly, the Court hereby **ORDERS** as follows:[4]

1. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2), for settlement purposes, the Court certifies the following Settlement Class:

> All persons in the United States who purchased an underweight "7 lb." ice bag manufactured by or on behalf of HCI during the applicable limitations period. Excluded from the Settlement Class are persons who made such purchase for purpose of resale; the defendant, its officers, directors, employees, legal representative, successors, assigns; any person or entity who has or who at any time during the relevant class period had a controlling interest in any Defendant; the Judges to whom this case is assigned and any member of the Judges' immediate families.

2. The Court grants final approval to its appointment of Rick Pansiera as Class Representative. The Court finds that Pansiera is similarly situated to absent Class Members, is typical of the Class, and is an adequate Class Representative, and that Class Counsel and the Class Representative have fairly and adequately represented the Class.

3. The Court grants final approval to its appointment of Class Counsel, appointing Brian P. O'Connor and William E. Santen, Jr. of Santen & Hughes, and

---

[4] This Order incorporates fully and completely the Settlement Agreement (Doc. 36-1) as if fully re-written here. Unless otherwise provided herein, all defined terms from the Settlement Agreement shall have the same meaning in this Order.

17

Victor A. Walton, Jr., Jacob D. Mahle and Brent D. Craft of Vorys, Sater, Seymour & Pease, LLP. Class Counsel have extensive experience handling class action cases and have thoroughly represented the Class Members' interests in this case.

4. The Settlement Agreement provides for injunctive relief only, from which no right to exclusion exists, and specifically preserves the Class Members' rights to bring claims for monetary damages of any kind. Accordingly, the Court finds that notice pursuant to the Class Action Fairness Act ("CAFA") is adequate. 28 U.S.C. § 1715; *see also* Fed. R. Civ. P. 23(c)(2)(A) ("For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class"); *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002) (Rule 23(b)(2) is a mandatory class; it does "not require that a court provide individual members of the class with notice and the opportunity to 'opt out' of the class action").

5. The parties timely complied with CAFA notice requirements, and the Court's docket reflects that no government official objected to the Settlement Agreement, nor otherwise attempted to intervene or participate in this civil action or the Fairness Hearing, following receipt of the CAFA notice.

6. Pursuant to Fed. R. Civ. P. 23(e)(2), the Court finds that the Settlement Agreement (Doc. 36-1) is fair, reasonable, and adequate, and that the Settlement Agreement is in the best interests of the Parties and the Class Members. The Court also finds the Settlement Agreement was entered into in good faith, at arm's length, and without any fraud or collusion.

18

7. The Court **APPROVES** the Settlement Agreement and hereby directs the Parties to implement and consummate the Settlement Agreement according to its terms and provisions, including, *inter alia*, the injunctive relief contemplated, which relief provides that Defendant HCI shall:

> (a) increase the amount of its acceptable fill range for the Product (i.e., HCI's "7lb" bag of ice) from 7.0-7.5 lbs to 7.1-7.6 lbs; (b) modify the packaging for the Product to include a statement that the weight of the Product is measured when packaged; (c) create and maintain an automated system for the daily reporting of underweight sample bags of Product and an automated alert if any manufacturing facility fails to daily report weights; and (d) perform routine quality control and quality assurance audits regarding the weight of the Product, and to engage a third-party consultant to conduct sampling of the Product.

8. The terms of the Settlement Agreement and this Final Order and the accompanying Final Judgment (to issue by way of a separate docket entry) are binding on the Parties, the Class Representative, all other Class Members as well as their heirs, executors, and administrators, successors and assigns, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits, or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits, or other proceedings involve matters that were or could have been raised in this Action and are encompassed in the Releases set forth in Sections 4.1 and 4.2 of the Settlement Agreement.

9. The Court **AWARDS** Class Counsel $325,000 in attorneys' fees and costs, to be paid according to the terms of the Settlement Agreement. These amounts of fees and costs are fair and reasonable.

10. The Court **AWARDS** the Class Representative, Richard W. Pansiera, a service award of $10,000 to be paid according to the terms of the Settlement Agreement.

11. Nothing in the Settlement Agreement, the Final Approval Order, Judgment, or the fact of the settlement constitutes any admission by any of the parties of any liability, wrongdoing, or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the action.

12. The Court **DISMISSES WITH PREJUDICE** all claims of the Class Members against Defendant in this action, without costs and fees except as explicitly provided for in the Settlement Agreement and set forth in this Order. Specifically, all claims related to injunctive relief only are **DISMISSED with prejudice** for the Class Members, and all claims for monetary damages are **DISMISSED with prejudice** for Plaintiff Rick Pansiera only.

13. Without affecting the finality of the Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of the Judgment and the Settlement Agreement, and all matters ancillary thereto. Nothing in this Order or the Final Judgment shall preclude any action to enforce the terms of the Settlement Agreement.

14. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

Date: 2/27/2024

*s/ Timothy S. Black*
Timothy S. Black
United States District Judge